UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>WESTON NURSERIES, INC.,<br><br>Debtor. | Case No. 05-49884 JBR<br><br>Chapter 11 |

### ORDER ON MOTION OF CUSHMAN & WAKEFIELD OF MASSACHUSETTS, INC. TO ALTER OR AMEND JUDGMENT

This matter came before the Court on the Motion of Cushman & Wakefield of Massachusetts, Inc. ("C&W") to Alter or Amend Judgment [# 820] pursuant to Fed. R. Bankr. P. 7052 and 9023. The judgment which C&W seeks to have amended or altered is the Order of April 14, 2008 [# 818] granting the Debtor's motion for summary judgment [# 698] and denying C&W's fee application [# 614].[1]

This dispute began almost one year ago with the filing of C&W's fee application and arises from a dispute over whether C&W is entitled to a commission for a sale of property that occurred after C&W's broker's contract expired. The Court answered that question in the

---

[1] The parties have filed multiple pleadings on the issue of whether C&W is entitled to receive a commission from the Debtor. *See* C&W's Application for Compensation [#614], Debtor's Limited Objection to C&W's Fee Application [#628], Supplemental Statement of C&W Relative to Its fee Application [#696], Debtor's Motion for Summary Judgment [#698],Debtor's Objection to Supplemental Statement of C&W Relative to Its Fee Application [#699], Response of C&W to Debtor's Motion for Summary Judgment [#794], and Debtor's Reply to Response of C&W to Debtor's Motion for Summary Judgment [#813].

negative and set forth its reasoning in its Memorandum of Decision [#817] issued contemporaneously with its April 14, 2008 Order. C&W argues that the Court made factual errors which, at the very least, precluded granting summary judgment. The Debtor filed an opposition [#821] to the Motion to Alter or Amend.

The Court, having reviewed all of the pleading relevant to this contested matter and having determined that no further hearing is necessary, DENIES the Motion to Alter or Amend for the reasons set forth herein.

**FACTS**

On October 14, 2005 (the "Petition Date") the Debtor filed a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code. Prior to the Petition Date, Mezitt Agricultural Corporation ("Mezag"),[2] and Roger N. Mezitt and R. Wayne Mezitt, on their own behalf and not as officers of the Debtor, retained C&W to market between 600 and 700 acres of land in Hopkinton, MA (the "Property") pursuant to a letter agreement dated February 17, 2005. In June 2006 the Court authorized the Debtor to add its land to the Property to be sold and to join Mezag and the Mezitts in employing C&W on essentially the same terms and conditions set forth in the February 17, 2005 letter agreement. The new letter agreement, dated only "February 2006" (the "Brokerage Agreement"), extended the expiration date of the Agreement to June 30, 2006.

Paragraph 7 of the February 17, 2006 agreement, which was incorporated into the Brokerage Agreement, provides in pertinent part:

---

[2]Mezag subsequently commenced its own Chapter 11 proceedings.

> In the event that: (i) at any time during the term of the Agreement, a Sale occurs, on any terms acceptable to Owner, with any Purchaser who was procured by C&W, or by Owner, or by any other person; or (ii) within 6 months after the expiration or termination of this Agreement, a [sic] an agreement for a Sale is executed by Owner on any terms acceptable to Owner with any Prospect and prior to, and during such six (6) month period immediately after, [sic] the expiration or termination of this Agreement, C&W has continued to participate actively in the negotiations with such Prospect on a best efforts basis, except to the extent Owner otherwise requests; then, and in either such event, Owner agrees to pay to C&W a sales commission....

The February 17, 2006 agreement defines 'Prospect" as:

> A Purchaser in a Sale for which the Closing occurs pursuant to an agreement of sale executed within the six (6) month period immediately following the expiration or termination of this Agreement, provided that (i) prior to the expiration or termination of this Agreement, such Purchaser engaged in substantive discussions with, and made a written proposal to, C&W regarding a Sale, (ii) such purchaser visited the Property prior to the expiration or termination of this Agreement, and (iii) such Purchaser is identified by C&W in a written list provided to the Owner within ten (10) days after the expiration or termination of this Agreement.

No sale occurred prior to the expiration of the Brokerage Agreement but in December 2006 a purchase and sale agreement between the sellers, including the Debtor, and the Boulder Company was executed. The sale subsequently was consummated in 2007.

Prior to the sale, C&W delivered a "Marketing Status Report-Hopkinton Farms, Hopkinton, MA" at various times although it is unclear when and to whom the Marketing Reports were delivered.[3] The Marketing Reports dated February 15, 2005 and March 4, 2005 do

---

[3] The reports are attached to the Supplemental Statement of C&W Relative to Its Fee Application. Although the Affidavit of Marci Loeber, C&W's authorized representative was also attached to the Supplemental Statement and although both the Supplemental Statement and the Motion to Alter or Amend Judgment refer to the Marketing Statements, among other things, as exhibits to Ms. Loeber's affidavit, the Marketing Reports were not exhibits to Ms. Loeber's affidavit. Her affidavit does not refer to the Marketing reports nor does it reference any

not list the Boulder Company or its principal, Roy MacDowell. The June 20, 2006 Report lists "The MacDowell Company" as passing on the Property and in the column styled "comments" was the notation "no interest." There was no mention of the Boulder Company, Mr. MacDowell or The MacDowell Company on the July 11, 2006 list.

**DISCUSSION**

C&W seeks the amendment or alteration of the April 14, 2008 Order pursuant to Rules 7052 and 9023 of the Federal Rules of Bankruptcy Procedure. The Debtor asserts that Fed. R. Bankr. P. 9024 is the appropriate rule to govern these proceedings as this contested matter was not decided after a trial but rather on motion. A motion to reconsider is governed by Fed. R. Civ. P. 59(e) made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023 or Fed. R. Civ. P. 60 made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024. In many respects the standards to be applied under the rules are the same; for example the standards for granting relief for newly discovered evidence are the same under both rules. *In re Reading Broadcasting, Inc.*, 2008 WL 1828821, *3 (Bankr. E.D.Pa. 2008). Procedurally they differ in that Fed. R. Civ. P. 59 requires motions for reconsideration to be filed within ten days of the order. "A timely motion under Rule 59 destroys the finality of the judgment...." Coquillette, *et al.,* 12 *Moore's Federal Practice,* § 59.12[1] at 59-38 (3d ed.2007).

> Because of this issue of finality, a motion filed within ten days of the entry of an order or judgment that seeks trial court reconsideration or a new trial is treated as a motion under Rule 59 rather than Rule 60(b) regardless of its title. *See Law Offices of*

---

attachments or exhibits to the affidavit. Nevertheless there does not appear to be a dispute that these lists were generated by C&W and, with respect to the Marketing Reports of June 20, 2006 and July 11, 2006, delivered to the Debtor. Therefore the Court will make reference to them.

> *William W. McVay v. Szeg,* 2006 WL 2850627, at *4 (W.D.Pa.2006) ("[A]ny post-judgment motion served within ten days after the entry of judgment, other than a motion to correct clerical errors, 'is within the unrestricted scope of Rule 59(e) and must, however designated by the movant, be considered as a Rule 59(e) motion ....'" (quoting *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 668 (5th Cir.1986)); *In re Earle Industries, Inc.,* 86 B.R. 386, 387 (E.D.Pa.1988); *Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority,* 72 B.R. at 621-22.

*In re Reading Broadcasting, Inc.*, 2008 WL 1828821, *4.

However denominated "the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. A party may not submit evidence that is not newly discovered in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert denied*, 476 U.S. 1171 (1986) (citations omitted). A motion for reconsideration is appropriate when there has been a significant change in the law or facts since the submission of the issue to the court; it is not a vehicle for an unsuccessful party to rehash the same facts and same arguments previously presented. *Keyes v. National Railroad Passenger*, 766 F. Supp. 277, 280 (E.D.Pa. 1991).

C&W challenges what it characterizes as the three reasons for the Court's April 14, 2008 Order. First, it argues that the Court erroneously found that the Boulder Company did not enter into a purchase and sale agreement within the time frame called for under C&W's employment contract. C&W is correct that the Debtor and Boulder entered into the purchase and sales agreement in December 2006, within six months of the expiration date. This fact, however, is not a basis for reversal of the April 14, 2008 Order. Rather it establishes that C&W cannot recover under Paragraph 7(i)of the Brokerage Agreement. C&W is only entitled to a commission if it can demonstrate that the requirements of Paragraph 7(ii) were satisfied. As set

forth in the April 14, 2008 Memorandum of Decision, to satisfy Paragraph 7(ii), C&W must establish that Boulder was a "Prospect."

C&W's second and third grounds for challenging the April 14, 2008 Order squarely relate to the question of whether the Boulder Company was a Prospect. C&W argues that it was because there was a written offer prior to the expiration of the Brokerage Agreement and because the Boulder Company was on the list of "Prospects" that was timely provided to the Debtor.

There are three requirements to establish that the ultimate purchaser was a Prospect. First, prior to the expiration of the Brokerage Agreement, Boulder must have engaged in substantive discussions with, **and** made a written proposal to, C&W regarding a Sale. C&W argues that it satisfied the first requirement when it produced a March 15, 2005 letter proposal and then a September 2005 Offer Memorandum. Specifically C&W argues

> In support of its position [that prior to the expiration of the Brokerage Agreement, Boulder had substantive discussions with and provided a written offer to C&W], C&W submitted the Affidavit of Marci Loeber which indicated, inter alia, that such a written proposal did exist. There was no counteraffidavit filed by the Debtor to attempt to refute the statement in her affidavit. Annexed hereto and marked exhibit 2 is a copy of the written proposal dated March 15, 2005 from Boulder capital, LLC, signed by Roy S. MacDowell, Jr., to Marci Griffith Loeber of C&W.

Ms. Loeber's affidavit addresses the March 15, 2005 offer as follows:

> Mr. McDowell's [sic] bid at the time (March 15, 2005) was $25m for approximately 615 acres of land. He was willing to deposit $2.5m at the signing of the P&S and close within 30 days from the signing. The land configuration was not suitable to the current ownership and several rounds of negotiation and on-site meetings in C&W's office, on-site with the brothers, and at Roy's Weston offices took place.

There is nothing in the affidavit which establishes that the offer was written. As of March 15, 2005 the Debtor was not a party to any agreement with C&W. Whether its land was even included in the offer is unknown. Although the Mezitt brothers were the principals of the Debtor, they were parties to the February 17, 2005 letter in their own right, not in their capacity as officers of the Debtor. Moreover C&W's attempts to introduce a copy of the March 15, 2005 proposal at this stage in the proceedings is too late. It is not newly discovered evidence under either Rule 59 or 60. Although C&W was aware of the existence of the March 15, 2005 letter, it did not offer it previously. Thus based upon the evidence which the Court may consider, the March 15, 2005 letter is not a written offer to the Debtor.

The same is true of the September 14, 2005 Memorandum. The Debtor was not a party to the February 17, 2005 letter agreement and this document was not previously provided consistent with Fed. R. Bankr. P. 56(c). Moreover the September 14, 2005 Memorandum is not a written offer to C&W; rather it is C&W's memorialization of the buyer's and seller's areas of agreements and disagreements. In addition Ms. Loeber's affidavit expressly attests that the parties's attempts to strike a deal were unsuccessful.

> Between April and July of 2005, C&W held varied and numerous discussions with The Boulder Company as it related to a successful purchase and sale of the property. In its conception, the offer was for the site at large on an "As Is" basis....
>
> C&W has memorialized [presumably in the September 14, 2005 Memorandum] the deal points that the Owner and The Boulder Company had agreed upon and those that were still open....
>
> Ultimately, talks broke down between the two parties with regard to the parcel reconfiguration. Soon thereafter Weston Nurseries (the business) filed for bankruptcy protection. C&W was later appointed by the United States Bankruptcy Court to facilitate the

      auction process, manage the negotiations and supply the necessary
      due diligence materials.

Therefore C&W did not establish that it provided the Debtor with a written offer as required under Paragraph 7(ii).

The second requirement, that Boulder visited the Property prior to the expiration of the Brokerage Agreement is undisputed. C&W glosses over the third requirement, that C&W identify the Boulder Company in a written list provided to the Debtor and its co-sellers within ten (10) days after the expiration of the Brokerage Agreement. C&W argues that it identified the Boulder Company, by referring to it as the MacDowell Company in an apparent reference to all of Mr. MacDowell's entities, ten days **before** the expiration of the Brokerage Agreement and cites to the June 20, 2006 Marketing Report attached to it Supplemental Statement Relative to its Fee Application. Lists provided before the expiration of the Brokerage Agreement do not comport with the language of the contract. The Brokerage Agreement language is very clear: the list of "prospects" must be provided within ten days **after** the expiration of the Agreement. Nevertheless assuming that the Marketing Reports which C&W generated on at least 4 occasions, namely February 15, 2005; March 4, 2005; June 20, 2006; and July 11, 2006, can be considered a list of "Prospects," and assuming that lists delivered before rather than after the expiration of the Brokerage Agreement are acceptable, those very Marketing Reports undercut C&W's argument. The June 20, 2008 Marketing Report, the first one given in any way to the Court that even mentions an entity that arguably might be understood to be the Boulder Company, states that "The MacDowell Company" is "passing" on the Property and has "no interest" in it. There was no mention of the Boulder Company, Mr. MacDowell or the

8

MacDowell Company on the July 11, 2006 Marketing Report, the operative list for determining the existence of a Prospect.

The Court is aware that C&W spent time, energy, and funds in an effort to market and sell the Property. C&W negotiated the terms under which its entitlement to a broker's commission was to be determined, however, and it has not satisfied those conditions.

For the forgoing reasons, the Motion to Alter or Amend the April 14, 2008 Order is DENIED.

Dated: May 7, 2008

*/s/ Joel B. Rosenthal*

Joel B. Rosenthal
United States Bankruptcy Judge