UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| WESTON NURSERIES, INC., | : | CASE NO. 05-49884-JBR |
| DEBTOR | : | |

**MEMORANDUM OF DECISION ON DEBTOR'S MOTION TO COMPEL [#826]**

This matter came before the Court for hearings on the Debtor's Motion to Compel Roger Mezitt and Ronald Stetler, as Escrow Agent, to Comply with Plan in order for the Debtor to Close Case and For Entry of Orders Consistent with Plan to (1) Segregate Escrow Funds Improperly Commingled, (2) Account for Unauthorized Payments, (3) Tender Payment for Authorized Fees and Expenses, and (4) Correct Title Issues [#826] and the Opposition of Roger N. Mezitt [#863].  At prior hearings on this matter the Court raised the question of whether it had jurisdiction to adjudicate this matter as the plan has been confirmed and all creditors paid in full. It thus ordered the parties to file memoranda addressing the jurisdictional question. After the parties sought and obtained several continuances to file those supplemental pleadings on the grounds that the parties had reached a settlement agreement and the pleadings were being circulated, the parties filed the jurisdictional briefs and informed the Court that they were unable to reach agreement regarding the language of the agreement.  Consequently the Motion and Opposition were presented to the Court for determination.

**Facts**

This dispute is but one in an ongoing family feud that lead to the filing of this case.  The current dispute arose out of a term sheet dated November 21, 2006 (the "Term Sheet") resolving certain disputes among the Debtor; Mezitt Agricultural Corporation ("MezAg"), an affiliated

entity which was also a Chapter 11 Debtor in its own Chapter 11 proceedings, case no. 06-42434[1]; Roger Mezitt; Wayne Mezitt; Peter, Mezitt; and Merylyn Mezitt. The Debtor and MezAg's First Amended Joint Plan of Reorganization, which was confirmed by the Court in July 2007, incorporated the Term Sheet and contained a provision whereby the Court would retain jurisdiction to enforce the terms of the plan and ensure that it was implemented. The Term Sheet, which was never converted to a settlement agreement because the parties could not agree as to specific language, provided that, among other things, an escrow account in the amount of $1,000,000 would be established for the "satisfaction of MezAg debt" with examples of such debt listed. One of the claims to be covered by the MezAg escrow was that of Cushman & Wakefield ("C&W"). If Roger and Wayne could not agree as to the other claims to be paid from the escrow, then such claims were to be submitted to binding arbitration.[2] Whatever is left in the MezAg escrow, after some specifically identified adjustments, is to be split equally between Roger and Wayne. But not surprisingly, the Mezitts cannot agree (i) whether certain payments, specifically work done by the Debtor's counsel for the benefit of MezAg, should be paid out the escrow, (ii) whether this MezAg escrow should be held in an account with one or more escrow accounts in this case, and (iii) miscellaneous other issues.

The Term Sheet also provided the basic framework for the sale of both Debtor and non-Debtor property; it was this sale which generated the funds to pay the creditors in full. The Debtor alleges shortly before the sale, it obtained a loan commitment "on attractive terms" to

---

[1] MezAg's case has been closed.

[2] The Court notes that the parties have already been back to this Court when they were unable to agree on an arbitrator and asked this Court to select one for them.

fund its post-confirmation operations. It also alleges that Wayne posted his sale proceeds as cash collateral for the loan pending the lender's review of other collateral, including its right of first refusal on Wayne's retained real estate, and because of the posting of the cash collateral, the lender advanced sufficient working capital to enable the Debtor to make its initial 75% distribution to unsecured creditors. The Debtor alleges that as part of the sale, the buyer was to receive a right of first refusal senior to any rights Wayne and Roger received with respect to land each retained but that due to the closing documents being filed "'out of order' by the title company" Roger's right of first refusal in Wayne's retained real estate was put on record "one second" ahead of the buyer's. Roger disputes the accuracy of the Debtor's representation and argues that the closing agenda, including the order for recording the documents, had been circulated and reviewed by all the parties.

While these disputes were brewing, MezAg's case was proceeding. Although the C&W claim was asserted against MezAg, the Debtor in this case, through its counsel, Reimer & Braunstein ("R&B"), undertook the successful objection to C&W's claim. The Debtor has sought unsuccessfully to have R&B's fees for this service paid out of the MezAg escrow. Weston is also seeking reimbursement for fees generated by its counsel in connection with other claims objections which benefitted MezAg.

**POSITION OF THE PARTIES**

Although MezAg's case has been closed, Weston alleges it cannot seek a final decree in this case because of the instant dispute. It argues that without resolution of this dispute, it cannot obtain favorable financing or future financing. It argues "its confirmed reorganization and financial future truly, dramatically and seriously [will be] jeopardized...." It argues that the plan

and confirmation order vest jurisdiction in this Court. The Debtor further alleges that the dispute "arises under" title 11 because it affects the plan and Term Sheet. Alternatively it argues that there is "related to" jurisdiction because affects the dispute affects the interpretation and implementation of the plan thereby establishing a "close nexus."

Roger argues that factually many of the Debtor's representations, especially with respect to the order in which the closing documents were recorded, are inaccurate and that had the Debtor or R&B wished to seek reimbursement from the MezAg escrow they should have filed a claim under 11 U.S.C. § 503(b) in the MezAg case. They failed to do so. Moreover Roger argues that this Court lacks jurisdiction as the current dispute is, at its essence, a question of how the remainder of the MezAg escrow should be divided between Roger and Wayne, a question whose answer has no impact on the Debtor's estate, if an estate even still exists.

**DISCUSSION**

It is axiomatic that the parties cannot create jurisdiction where none exists, even if their attempt to create jurisdiction is embedded in a plan or confirmation order. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). Indeed as the *Resorts International* court noted, following confirmation bankruptcy court jurisdiction cannot and does not live on indefinitely. First, confirmation often terminates the estate and vests assets in the reorganized debtor as happened in this case. Second, even if the termination of the estate need not be the litmus test for signaling the end of bankruptcy court jurisdiction, there is a diminution in the boundaries of jurisdiction as the reorganized debtor moves past confirmation. In order for related to jurisdiction to be present post confirmation, the court concluded that there must be a "close nexus" between the dispute and the confirmed plan. *Id.* at 166-67. *See also Valley Historic*

*Limited Partnership v. Bank of New York*, 486 F.3d 831 (4th Cir. 20070; *In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005) (both adopting "close nexus" test). Otherwise, the reorganized debtor is "just like any other corporation; it must protect its interests in the way provided by applicable non-bankruptcy law, without any special swaddling." *Boston Regional Medical Center v. Reynolds (In re Boston Regional Medical Center)*, 410 F.3d 100, 106 (1st Cir. 2005) (internal quotation marks and citation omitted).

*Boston Regional Medical Center* involved a liquidating plan which the court explained distinguished the case from other post confirmation cases such as *Resort International* as those involved reorganized debtors. The policy interest in favor of expeditious liquidation and distribution of estate assets favored analyzing post confirmation retention of jurisdiction under the well known test for related to jurisdiction: whether the "outcome of the litigation potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate. *Id.* at 105 (internal quotation marks and citation omitted).

Even if this dispute is analyzed under the broadest possible interpretation of related to jurisdiction, the dispute falls outside the realm of related to matters. This dispute is nothing more than a dispute between two family members. The dispute is, at its essence, a fight over how money remaining in the MezAg escrow is to be divided between those two non debtors and whether one got a better priority with respect to the right of first refusal than the other thought he should have. The latter point is interesting because while the Debtor claims "correcting" of the priorities is necessary to carry out the terms of the Term Sheet and the plan, it is advocating a priority to benefit the buyer, a party which closed the sale some time ago and which has not

asked this Court to reorder the priorities. Resolution of these disputes will have *no* impact on the Debtor's estate. That the Debtor needs, or believes it will need, to correct the title issues because they impair the value of Wayne's property which the Debtor believes will again need to be pledged as collateral in order for the Debtor to obtain financing in the future does not grant post-confirmation jurisdiction in perpetuity.

The Debtor's creditors have been paid in full in accordance with the plan. There is nothing left to accomplish under the plan. It is time for the Debtor to seek a final decree[3] and the family members, who seem determined to continue their fight, to find another forum as this Court's jurisdiction has come to an end.

**CONCLUSION**

For the foregoing reasons, the Motion will be denied. The Debtor will be given thirty days to file a motion for a final decree so the case may be closed.

Separate orders will issue.

*Joel B. Rosenthal*

Dated: April 24, 2009      _____
　　　　　　　　　　　　　　Joel B. Rosenthal
　　　　　　　　　　　　　　United States Bankruptcy Judge

---

[3]That the Debtor has continued to incur quarterly fees to the United States Trustee is not a basis for jurisdiction. Those payments obviously did not affect the Debtor's ability to pay its creditors in full as called for in the plan. They continue to incur now only because of the Debtor's refusal to close the case.